UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TRACY HAYNES G.,

          Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

          Defendant.

Case No. C19-5227-MLP

ORDER

## I.    INTRODUCTION

Plaintiff seeks review of the denial of his application for Disability Insurance Benefits. Plaintiff contends the administrative law judge ("ALJ") erred by rejecting the medical opinions of State agency physicians Guillermo Rubio, M.D. and Robert Hander, M.D., as well as the opinion of occupational therapist Christina Casady, OTR. (Dkt. # 8 at 1.) As discussed below, the Court REVERSES the Commissioner's final decision and REMANDS the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## II.    BACKGROUND

Plaintiff was born in 1965, has a high school education and approximately two years of college. AR at 36. He worked as a pump station operator for fifteen years. *Id*. at 53. Plaintiff was last gainfully employed in 2015. *Id.* at 54.

On April 6, 2016, Plaintiff applied for benefits, alleging disability as of September 30, 2015. AR at 34.[1] Plaintiff's application was denied initially and on reconsideration, and Plaintiff requested a hearing. *Id.* at 15. After the ALJ conducted a hearing on January 23, 2018, the ALJ issued a decision finding Plaintiff not disabled. *Id.* at 12-30.

Utilizing the five-step disability evaluation process,[2] the ALJ found:

Step one: Plaintiff has not engaged in substantial gainful activity since September 30, 2015, the alleged onset date.

Step two: Plaintiff has the following severe impairments: sarcoidosis, fibromyalgia, depression, and generalized anxiety disorder.

Step three: These impairments do not meet or equal the requirements of a listed impairment.[3]

Residual Functional Capacity: Plaintiff can perform "light work as defined in 20 C.F.R. 404.1567(b)" except he can occasionally climb ramps and stairs, but should never climb ladders, ropes, or scaffolds; he can occasionally stoop, kneel, crouch, and crawl; he can have occasional exposure to fumes, odors, dusts, gases, and poor ventilation; he can have occasional exposure to extreme cold, extreme heat, vibrations, and hazards such as heights and machinery; he should work in an environment free of fast-paced production requirements, with only occasional workplace changes, only occasional interaction with the public, and only occasional supervision.

Step four: Plaintiff cannot perform past relevant work.

Step five: As there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, Plaintiff is not disabled.

AR at 12-30.

As the Appeals Council denied Plaintiff's request for review, the ALJ's decision is the Commissioner's final decision. AR at 1-6. Plaintiff appealed the final decision of the Commissioner to this Court. (Dkt. # 1.)

---

[1] Plaintiff's date last insured is December 31, 2010. AR at 34.

[2] 20 C.F.R. § 404.1520.

[3] 20 C.F.R. Part 404, Subpart P. Appendix 1.

### III.    LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id*.

"Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id*.

### IV.    DISCUSSION

**A.    The ALJ Erred in Evaluating the Medical Opinion Evidence**

*1.    Standards for Reviewing Medical Evidence*

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes*, 881 F.2d at 751; *see*

*also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his/her conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors. *Lester*, 81 F.3d at 831. However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them. In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it. Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2. Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record. *Thomas*, 278 F.3d at 957; *Orn*, 495 F.3d at 632-33.

## 2.    *Guillermo Rubio, M.D., and Robert Hander, M.D*

Plaintiff contends that the ALJ erred by rejecting an important aspect of the August 2016 and November 2016 medical opinions of State agency physicians Guillermo Rubio, M.D. and Rober Hander, M.D., respectively, without comment. (Dkt. # 8 at 2 (citing AR at 73-74, 91-92).) Specifically, Drs. Rubio and Hander reviewed Plaintiff's medical records and opined that he can stand and/or walk with normal breaks for a total of six hours in an eight-hour workday, and sit with normal breaks for a total of about six hours in an eight-hour workday, but "must periodically alternate sitting and standing to relieve pain and discomfort." AR at 73, 91. In other words, Drs. Rubio and Handler found that Plaintiff can perform light work with additional postural limitations, including a sit/stand option. [4] *See Buckner-Larkin v. Astrue*, 450 Fed.Appx. 626, 2011 WL 4361652, *1 (9th Cir. 2011) (noting that a "sit-stand option . . . is most reasonably interpreted as sitting or standing "at-will," and "the DOT does not discuss a sit-stand option").

The ALJ stated that he gave "significant weight" to the opinions of the non-examining State agency physicians, because their assessments were consistent with the evidence as a whole, and they accurately reflect the claimant's physical limitations during the period under review. AR at 23. Although the ALJ found Plaintiff capable of light work with additional postural limitations, the ALJ did not include the sit/stand option in the RFC assessment, or provide any reason for rejecting this aspect of the non-examining physicians' opinions. *Id*. Indeed, the ALJ acknowledged the other postural limitations identified by the non-examining physicians, but omitted the sit/stand option from his summary of their opinions. The ALJ stated, "Based on their review of the record, both consultants opined that the claimant would have functional limitations

---

[4] As a threshold matter, the Court finds that the non-examining physicians' opinion that Plaintiff must be able to "periodically alternate sitting and standing to relieve pain and discomfort" means that he must be able to alternate between sitting and standing at will, *i.e*, he requires a sit/stand option. AR at 73, 91.

consistent with light work activity, with the following additional restrictions: occasional

climbing, stooping, kneeling, crouching, crawling; and avoiding concentrated exposure to

extreme temperatures, vibration, pulmonary irritants, and hazards." AR at 23.

The Commissioner argues that there was no conflict between the non-examining

physicians' opinions and the RFC limiting Plaintiff to "light work," because the definition of

"light work" already includes position changes. (Dkt. # 9 at 3.) The Commissioner asserts that

the "full range of light work" requires "standing or walking, off and on, for a total of

approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the

remaining time. . . . Many unskilled light jobs are performed primarily in one location, with the

ability to stand being more critical than the ability to walk." (*Id.* (quoting SSR 83-10, *available*

*at* 1983 WL 31251, at \*5).) Thus, the Commissioner contends that no conflict existed between

the non-examining physicians' opinions and the RFC, "because light work includes, by

definition, periodically alternating sitting, standing, and walking within an 8-hour workday."

(*Id.*)

The Commissioner's suggestion that the definition of light work in the social security

regulations necessarily includes a "sit/stand option," *i.e.*, the ability to alternate between sitting

and standing at will, is perplexing. Neither the applicable regulations, nor the Dictionary of

Occupational Titles ("DOT"), include language about alternating between sitting and standing at

will in the definition of "light work."

Specifically, 20 C.F.R. § 404.1567(b) provides,

Light work involves lifting no more than 20 pounds at a time with frequent lifting
or carrying of objects weighing up to 10 pounds. Even though the weight lifted may
be very little, a job is in this category when it requires a good deal of walking or
standing, or when it involves sitting most of the time with some pushing and pulling
of arm or leg controls. To be considered capable of performing a full or wide range
of light work, you must have the ability to do substantially all of these activities. If

someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

Similarly, the Dictionary of Occupational Titles ("DOT") defines "light work" as follows:

**L-Light Work** - Exerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a negligible amount of force constantly (Constantly: activity or condition exists 2/3 or more of the time) to move objects. Physical demand requirements are in excess of those for Sedentary Work. Even though the weight lifted may be only a negligible amount, a job should be rated Light Work: (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible. NOTE: The constant stress and strain of maintaining a production rate pace, especially in an industrial setting, can be and is physically demanding of a worker even though the amount of force exerted is negligible.

The definition of "light work" in SSR 83-10, upon which the Commissioner relies, also does not support the Commissioner's position. SSR 83-10 states that the claimant must be able to alternate between standing and walking for a total of six hours, and they may sit during "the remaining time," *i.e.,* the claimant may sit during the two hours when the claimant is not alternating between standing and walking. The Commissioner fails to cite any caselaw, and the Court is aware of none, holding that the statement in SSR 83-10 that "sitting may occur intermittently during *the remaining time*" (when the claimant is not standing or walking) means that a claimant can alternate sitting and standing at will throughout the performance of the light work. As the Plaintiff points out, "were such qualification unnecessary, the State agency physicians would have merely stated that [Plaintiff] can perform the requirements of light work, without adding any qualification." (Dkt. # 10 at 2.) The Ninth Circuit has also held that an ALJ must call a vocational expert and solicit testimony regarding which light jobs include sit/stand options if that is part of a claimant's RFC. *See DeLorme v. Sullivan,* 924 F.2d 841, 850 (9th Cir.

1991) (noting that "when a claimant must alternate periods of sitting and standing, the ALJ is directed to consult a vocational expert," but remanding on other bases). *See also* SSR 82-12, *available at* 1983 WL 312523, at *4 (providing that "most jobs have ongoing work processes which demand that a worker be in a certain place or posture for at least a certain length of time to accomplish a certain task. Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will. In cases of unusual limitation of ability to stand, a [vocational expert] should be consulted to clarify the implications for the occupational base.").

Accordingly, the ALJ committed harmful error by failing to provide legally sufficient reasons for rejecting the sit/stand option set forth in the non-examining State agency physicians' opinions. This case must be remanded for the ALJ to re-evaluate their opinions, and either incorporate a sit/stand option into the RFC or provide legally sufficient reasons for rejecting this limitation, should such a conclusion be warranted.

### 3. Christina Casady, OTR

Occupational Therapist Ms. Casady conducted a Functional Capacities Evaluation of Plaintiff on September 23, 2016. AR at 542-62. Ms. Casady opined that Plaintiff's functional capacity fell between the sedentary and light categories identified by the DOT, and further opined that Plaintiff was required to alternatively sit, stand, and walk during an eight-hour workday and that he could alternate standing and walking for three hours out of an eight-hour workday. *Id.* at 543-44.

Occupational therapists such as Ms. Casady are considered "other sources" or "non-medical sources" under the social security regulations. *See* 20 C.F.R. § 404.1502. In order to determine whether a claimant is disabled, an ALJ must consider lay-witness sources, such as testimony by nurse practitioners, physicians' assistants, and counselors, as well as "non-medical"

sources, such as spouses, parents, siblings, and friends. *See* 20 C.F.R. § 404.1527(f). Such testimony regarding a claimant's symptoms or how an impairment affects his/her ability to work is competent evidence, and cannot be disregarded without comment. *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993). This is particularly true for such non-acceptable medical sources as nurses and medical assistants. *See* Social Security Ruling ("SSR") 06-03p (noting that because such persons "have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists," their opinions "should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file."). If an ALJ chooses to discount testimony of a lay witness, he must provide "reasons that are germane to each witness," and may not simply categorically discredit the testimony. *Dodrill,* 12 F.3d at 919.

First, the ALJ rejected Ms. Casady's opinion because she is "neither a treating source of the claimant, nor an acceptable medical source, which limits the weight that can be given to her assessment." AR at 24. The Commissioner concedes that this was not a proper reason to reject her opinion. (Dkt. # 9 at 8 n.3.) The Court agrees. The ALJ erred by categorically rejecting Ms. Casady's opinion because of her status as a non-medical source. *See* 20 C.F.R. § 404.1527(f) (requiring the ALJ to weigh and explain the weight given to "opinions from medical sources who are not acceptable medical sources…").

Second, the ALJ rejected Ms. Casady's opinion "concerning the claimant's posture, manual dexterity, and tolerances for sitting, standing, and walking" because her opinion was inconsistent with treatment notes from "acceptable medical sources, who have not reported similar findings and have instead documented improvement in the claimant's impairments and symptoms with ongoing treatment, including treatment records after the date of Ms. Casady's

evaluation." AR at 24. The Court finds that this general finding was insufficient to discount Ms.

Casady's opinion, as the ALJ wholly failed to identify what contrary opinions he was referring

to. The Commissioner asserts that the ALJ's general summary of the medical evidence earlier in

the decision (*id*. at 22-23) should be sufficient for the Court to infer the ALJ's reasoning.

However, the ALJ's summary of evidence does not shed any light on the question of which

medical opinions the ALJ believed to specifically conflict with Ms. Casady's opinion. *Id*. To the

extent the Commissioner attempts to identify such evidence, his explanations constituted

improper post-hoc rationalizations. "To say that medical opinions are not supported by sufficient

objective findings or are contrary to the preponderant conclusions mandated by the objective

findings does not achieve the level of specificity our prior cases have required, even when the

objective factors are listed *seriatim*. The ALJ must do more than offer his conclusions. He must

set forth his own interpretations and explain why they, rather than the doctors', are correct."

*Embrey*, 849 F.2d at 421-22.

Accordingly, the ALJ failed to sufficiently articulate a germane reason for rejecting Ms.

Casady's opinion regarding Plaintiff's limitations. This error was not harmless, as the

Commissioner suggests, because the ALJ did not set out limitations consistent with Ms.

Casady's opinion in the RFC. On remand, the ALJ should also reevaluate Ms. Casady's opinion,

consistent with the direction provided by this opinion.

## V.    CONCLUSION

For the foregoing reasons, the Commissioner's final decision is REVERSED and this

case is REMANDED for further administrative proceedings under sentence four of 42 U.S.C. §

405(g). On remand, the ALJ should re-evaluate the opinions of Dr. Guillermo Rubio, M.D.,

*//*

Robert Hander, M.D., and Christina Casady, OTR.

Dated this 19th day of August, 2019.


_____
MICHELLE L. PETERSON
United States Magistrate Judge